218-0706, Pine Landscaping, Inc. This is the testimony. Good morning, Your Honors. My name is Patricia Hall, and I'm here on behalf of Pine Landscaping, Inc., the embellished employer in this case. We are here today requesting that this Court reverse the Commission decision as against the manifest way of the evidence and find that Mr. Cosimo Barraza is not entitled to benefits as he failed to meet his burden of proof. Now, was this an unwitnessed accident? This was, Judge, yes. So basically, there were no witnesses who saw the claimant fall. The findings have to be based upon the claimant's credibility, right? Yes, Judge. And that is our primary contention today. I'd like to focus on the causal connection issue because I believe that that is the heart of the matter today. And Patricia's credibility actually permeates through that entire issue and affects and completely contradicts the Commission's decision in this case. Well, that's why I'm asking the question. I understand you can make that argument based on some of the facts in the case, but didn't the Commission believe the claimant? The Commission did indicate in their decision that they believed the claimant, however... How do we disregard that? I'm sorry, Judge? How do we disregard that finding of credibility? The Commission, while entitled to weigh the credibility of the witnesses, has to support their decision with some evidence or reasonable, fair inferences of that evidence. And in this case, the evidence just is not there to support the credibility of the claimant. If you look at the medical records, the claimant is inconsistent in his reports. He holds back information from his treating physicians. He does not report a trauma to his face to the physician that he was currently treating with at the time of the accident. He does not tell our expert witnesses that he had prior treatment. He doesn't tell his treating physicians that he had prior treatment. He goes throughout his reports and has different versions of what may or may not have happened the day that he allegedly fell. So the credibility factor, and if you've read the Petition, the Commission is very light on their support of the petitioner's credibility. They don't give any reason for that. And this is a decision that was split, and they can't support the fact that the petitioner is credible with any of the medical. The medical that they discuss specifically under the decision goes to the petitioner's complaints unrelated to the jaw. And the jaw has been the primary focus of his treatment and has been less of a focus of his prior and ongoing treatment during the time of the accident. And if you look at the medical evidence, and this is the first issue, the petitioner was treating just days and weeks prior to the alleged injury for the same complaints that he had following the accident. He was treating for light facial pain in the jaw. He was treating for headaches and TNJ. He visited the emergency room three days prior for headaches in the back of his head. Let me ask you a question. Let me ask the question this way. Did the claimants treating physicians, clinicians, were they ever able to pinpoint a diagnosis as to the real source of the problems? No. In fact, there are many diagnoses to this record, as you know. The physicians, it's not surprising that they didn't have all the information. They didn't have the prior treatment records. They didn't have the reports. They didn't have all the information they needed to make a decision, which is then demonstrated in the two testifying treating physicians' status definitions. They admitted they didn't have his medical record. Dr. Hobock and Dr. Lupenow testified on behalf of the petitioner. And while initially they testified that the petitioner's condition is either this Eagle's Syndrome or there's neuralgia involved or there's all these different diagnoses that they were giving, but they didn't have anything from prior to the accident to go on. So when asked about that, then they testified that it is possible. If you look at the testimony of Dr. Lubaka, when confronted with the possibility that he was already suffering from these conditions, from this pain, he said it is possible that it's degenerative and it's possible that it was already there. But he didn't have any medical records whatsoever to look at, so he didn't know if that was the case. And Dr. Lupenow was the same. He diagnosed glossovagal neuralgia and cervical radiculopathy. However, the petitioner was already diagnosed with cervical radiculopathy at an ER prior to the accident, and Dr. Lupenow didn't know that. So he also didn't know about the prior treatment. And he was actually not even provided treatment records for his treatment after the injury. So you have treating physicians throughout, upwards of 20 treating physicians that don't have the full picture. And then you have our physicians who were presented with medical evidence, medical records, took a history, examined the petitioner, and found that there was an alcohol connection. And further, the second physician that we use in this case, Dr. DiBerti, initially said it was possible that this was causally related, but when presented with the prior medical history and the prior complaints, he issued an addendum opinion stating that these complaints are preexisting and they continue. They're not a new complaint. They're not a new injury. And it's clear in this timeline, if you look at it, there's nothing in the medical records suggesting that his complaints changed. He simply treated in May for his pancreatitis, TMJ. Dr. Romano's notes indicate he needed a procedure done. He went in June, June 26th, June 30th, he followed up. He had root canals. He followed up and had an extraction. After that, he went to Dr. Romano on July 2nd, which further demonstrates that he's not credible. There's nothing in Dr. Romano's notes whatsoever indicating that there was a traumatic event, nothing. The commission even acknowledges that in their decision, but they counter it with this referral letter that she wrote to Dr. Romano three months later thanking him for the referral. If you look at the referral letter, it says thank you for the referral for the substitution of surgical needs for the injections that he received that day. So, and there's a referral in Dr. Romano's record that you'll see that he referred for a consultation. It doesn't specify to whom, but it's dated October 5th, 2009. They're saying there is no evidence in the record to support the commission's decision? I haven't touched, yes. And that's why we're here asking that you reverse the decision. I will bring up, we did make an argument that the commission's decision was, I guess, a manifest way with regard to accidents. And that is to demonstrate that the petitioner did not, as you discussed, did not have evidence. He did not present evidence of any notice, any timeline, any reports until two weeks later. And to further support our point, the commission's decision even argues with the own petitioner that they found credible. So they suggest in their decision that the petitioner's credible, despite the arbitrator's seeing in his testimony. They found him credible, but then later they disagreed with his choice of physicians when he testified at trial that his initial intervention for treatment caused by this injury was with Dr. Sheik two weeks later. They found that Dr. Sheik was not the source of the physicians for intervention for this injury, that it was Dr. Romano. It just had to be because it makes sense, because he was already treating, even though the records are completely void of any mention of any traumatic injury. So what we ask today is that you look at the commission's decision and determine that the, it's completely against the manifest way. You have a divided commission, two to one. So you have two individuals that saw the evidence, or two individuals that saw the evidence. One of them saw the testimony. They don't find the petitioner credible. And then you have two individuals that found him credible. And there's just not enough support in that decision to. You realize when we view the majority decision, we don't review the dissentings. Yes, Judge, I do realize that. It goes to the weight of the evidence, and it goes to the fact that they just don't have enough. There just isn't enough there to support the decision that they found. I guess unless there's any other questions. I believe there are. You have time to reply. Okay. Thank you, Judge. Thank you, Judge. Good morning, Madam Counsel. My name is J.C. Carroll, and I represent the appellate Mr. Cosimo Barraza, and I stand before you. We're here today asking that the decision of the commission be heard and heard, not quite heard, specifically regarding the modification of the commission's decision regarding the two-doctor rule. There's three main issues I want to talk to you about today. The first is that upon our use that Mr. Barraza was not a credible witness, and therefore the commission's findings that he sustained in a defensible action should be reversed. However, that argument is not supported by the entirety of the evidence, and further, the credibility of witnesses is acknowledged to be judged by the commission, and those findings should not be reviewed, or our proceeding should not be discouraged. Secondly, the commission corrected the problem that Dr. O'Connor was Mr. Barraza's first choice of doctor, but its overall findings regarding the two-doctor change in referrals is against what the appellate stated in the evidence and should be modified. Finally, the appellate's attempt to have his honor report revisit the conflicting medical opinions must be rejected because it's from the province of the commission. If there's any issues here, that conflicted testimony. Counsel, can you tell us what was the definitive diagnosis as to the underlying cause of the claimant's condition? Well, I think there's a number of conditions for which he was suffering from, that the EGLE syndrome, the coselta are the diagnosis that he was treating with Dr. Luhnauer and Dr. Baca. But did anybody actually state in the hearing that this is the cause of the claimant's dental condition or facial pain? They said that the accident could have aggravated it. Aggravated what? What was the cause? The right jaw problems. The doctor stated that he didn't have his lower jaw teeth, and on this accident, he could have lived without that problem for the rest of his life without those teeth causing him any problems. Oh, his teeth was the cause of the problem? No, the jarring of his jaw and his upper jaw was caused by the fall, and the doctor indicated that had this fall not happened, he could have lived without his teeth for his entire life without any additional problems besides the lack of teeth. He admittedly was treating for a variety of dental issues prior to this, but the condition really became worse afterwards. So was your theory that this was an aggravation of a pre-existing condition? It's a combination of everything. He did have pre-existing conditions. That's not something that I would argue against, but... Did you argue that before the arbitrator had the commission level, that there was an aggravation of a pre-existing condition? I wouldn't state it the whole way, as that's what our doctors testified to and indicated in their dental history transcripts. And again, it's our position that the credibility of these witnesses is to be judged by the commission, and again, not discerned on appeal unless there's no evidence to support that. Briefly, the overwhelming evidence supports the commission's determination that Mr. Crawford was a credible witness. In fact, even the arbitrator was credible enough to determine that it was the same incompensable accident that he was found to have caused the connection. Upcoming is the number one issue with his credibility, it seems, is that Dr. Rahama didn't know the history of the accident in the first few office notes. The other hand, I believe he, being super outfitted, discussed the accident in his primary tenders. However, as a standard, before he failed, I don't know why Dr. Rahama didn't know the accident in those office notes, but I can tell you that I have some certainty that he was fully aware of it. Dr. Rahama referenced the July 7, 2009 accident directly, and he explained what treatment was being recommended as a result of this accident. That's the March 8, 2011 letter. The column doesn't really address this as it doesn't fit their narrative. The discussion between Dr. Rahama and Dr. Rahama are further evidenced by their written communications between the two, between Dr. Rahama and Dr. Sheehan. And Dr. Sheehan, as we noted earlier, personally thanked Dr. Rahama for referring Mr. Rahama to him. And there is also a decorated referral from Dr. Rahama to Dr. Sheehan. The column again argues that the sole evidence of an accident comes from the witness's own testimony at trial and the subjective reports they have made to some 20-plus medical providers. By definition, an accident that is not witnessed and is not caught on video is almost always going to have to be supported by trial testimony, as well as medical records and reports. That's what the Commission does every day when making these decisions. A column for record cited that Michelle Doyle, when it was presumed that the person would not falsify statements made to a physical, threw a physician in front of a police officer to proceed by the treatment. The column then misapplies the rule in its arguments. Again, the column correctly noted that Mr. Rahama told some 25 physicians about this abject accident, and the Commission, as they correctly applied the rule, said that those statements that he made supported his testimony to Dr. Sheehan to corroborate. Respondent argues that his credibility is damaged because Dr. Rahama didn't know those reports, and so he obviously knows what he did. He knows what he did to all the other 20 doctors. I can't tell you why Dr. Rahama didn't do it. The rule in itself clearly supports the finding of the Commission. He was speaking the truth to all these doctors when he saw treatment. Again, I don't know what Dr. Rahama was thinking when he didn't listen to his opposites, but all these other doctors are clearly not going to be able to rely on the Commission. Next, the Commission corrected Rahama. Dr. Rahama wasn't the first choice of doctor. It's overall harm to Dr. Sheehan that the bills come out on him. Again, this is a manifesto. Can I ask you a question? Did you file a cross-appeal? I did not. How can you ask for a modification of the judgment? Well, I believe that the column is also asking for a modification of the judgment. Well, I don't care about that. My question is, how do you do it? You're asking for additional relief that was denied by the Commission. Failure to award out-of-pocket expenses is against the manifest weight of the evidence. We've got a couple of others. Modify the Commission's finding regarding the two-doctor rule and find that the doctors listed fell within the chain of referral, presumptively because you want their bills paid. Not be allowed to authorize treatment. You filed no cross-appeal. You can't argue those points. I mean, the whole purpose of it, you're asking for more than the Commission gave you below. When you're the appellee, you can only, as an appellee, can only argue in support of the judgment below. You can't ask for additional relief. If you're going to ask for something more than what the judgment gave you, you have to file a cross-appeal. Yeah, I mean, I don't know how you can even argue the points. But go ahead. Well, unless you want to just waive that portion. I will waive that portion, Your Honors. That said, I'll move on, Your Honors, to the Appellant's Times-Graduate Honorable Court revisit of the conflicting medical opinions. Again, it's the promise of the Commission to resolve any issues with conflicting medical testimony. The Commission reviewed and determined that the treating medical providers in the claim were more reliable than the appellant's experts. The appellant believes that this reversal is proper because they argued that only their experts were aware of the prior medical history. That's not to be entirely accurate. In fact, the Commission actually awarded treatment that was based on the opinions contained in Dr. Romano's letter, who we all know was treating Mr. Romano both before and after the accident. So he was, in my opinion, our opinion, in the best position to render these opinions. The Commission is clearly able to rely on that evidence to reach a conclusion. For these reasons, we ask you to affirm the decision of the Commission and to believe that the evidence supports the compensable accidents as well as the causation findings of the outstanding Commission. Thank you. Thank you, Counsel. Counsel, you may reply. The bottom line here is that the Petitioner is not credible. His entire testimony is inconsistent. His doctor's opinions, they testify, are based completely on his reports. So the credibility affects the weight of his doctor's opinions and the persuasiveness of his doctor's opinions. You're saying in so many words that doctor's opinions are flawed because they were based on an improper medical history? Yes, Judge. Specifically, Dr. Romano testified that his opinion was completely based on the Petitioner's reports. Dr. Labaca testified that when he was giving his causal connection opinion, this could be related. He never gave an actual consistent yes to that question. He said this could be related. And then Dr. Romano, while he made treatment recommendations, his records are never clear either as far as an actual diagnosis of the problem and he never gave a causal connection opinion himself and he was never presented to testify. So there's just not enough evidence here to support either that the Petitioner was credible or that the Commission had anything to rely on to make that finding or to reverse the arbitrator's decision. This isn't just conflicting medical opinions. This is persuasive, informed medical opinions versus uninformed medical doctors that just never brought up the story. Okay. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement that this position shall issue.